IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION, | ) ) ) |
| Appellant, | ) ) |
| v. | ) No. 04 C 4696 ) ) |
| BETTIE J. DURRANI, | ) ) |
| Appellee. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Appellant Educational Credit Management Corporation's ("ECMC") appeal of a bankruptcy court ruling. For the reasons stated below, the bankruptcy court's ruling is affirmed.

## BACKGROUND

Appellee Bettie Durrani ("Durrani") attended Chicago University from 1984 to 1993. In 1989 she received a Bachelor of Arts degree in Independent Studies and in 1993 she received a Masters of Science Degree in Corrections and Criminal Justice. Durrani is now 51 years of age and has no dependents. Durrani was approximately 41 years of age when she received her Masters Degree. Durrani has a

1

daughter who is now 21 years old, married, and lives with her husband.

In March of 1994, Durrani consolidated twelve of her school loans with ECMC, totaling $31,869.14. ECMC is a private non-profit corporation. On June 2, 1997, Durrani filed a Chapter 13 Bankruptcy Petition. Durrani also filed an adversary complaint in December of 2002, seeking a discharge of her student loan debt under the undue hardship provision of 11 U.S.C. § 523(a)(8). A trial was held and during the trial the bankruptcy court calculated that the loan payments for Durrani would be approximately $395 per month. In February of 2003, the bankruptcy court ruled that Durrani had not established the requirements for the undue hardship provision and her discharge request for her educational loans was denied. Durrani filed a motion for reconsideration and in June of 2004, the bankruptcy court granted the motion for reconsideration and discharged Durrani's entire student loan debt. ECMC appeals the discharge ruling.

## LEGAL STANDARD

A federal district court has jurisdiction, pursuant to 28 U.S.C. § 158, to hear appeals from the rulings of a bankruptcy court. On appeal, the district court reviews the factual findings of the bankruptcy court under the clearly erroneous standard and reviews the bankruptcy court's legal findings under the *de novo* standard. *In re A-1 Paving and Contracting, Inc.*, 116 F.3d 242, 243 (7th Cir. 1997).

## DISCUSSION

ECMC argues that the bankruptcy court erred in finding that Durrani had shown undue hardship. A bankruptcy "does not discharge an individual debtor from any debt. . . .for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an *undue hardship* on the debtor and the debtor's dependents. . . ." 11 U.S.C. § 523(a)(8)(emphasis added).

ECMC first contends that the bankruptcy court committed an error when it relied upon non-controlling precedent. However, although the bankruptcy court made reference to rulings in other Circuit, the bankruptcy court expressly acknowledged that it "is bound by the Seventh Circuit's interpretation of *Brunner* as set forth in *Robertson* and reinforced in *In re O'Hearn*, 339 F.3d 559 (7th Cir. 2003)." (Bk R 8). Thus, although ECMC speculates that the bankruptcy court gave too much weight to non-controlling precedent, the bankruptcy court made it clear that it abided by all Seventh Circuit precedent. Nothing prohibits the bankruptcy court from considering persuasive precedent in addition to Seventh Circuit precedent in making its ruling. ECMC claims that the bankruptcy court did not follow the analysis set forth in *In re O'Hearn*. However, ECMC would do well to review the bankruptcy judge's ruling. The ruling of the bankruptcy judge specifically cites *In*

3

*re O'Hearn*, applies the facts in the instant action to each of the factors set forth in *In re O'Hearn*, and the court states specifically in the conclusion of its ruling that Durrani has met all three prongs of the test enunciated in *O'Hearn*. Thus, ECMC's contention that the bankruptcy court ignored Seventh Circuit precedent and relied exclusively on non-controlling precedent is unfounded.

## II. Undue Burden Analysis

In the Seventh Circuit, in order to meet the "undue hardship" requirement under 11 U.S.C. § 523(a)(8) a debtor must show that: "(1) the debtor cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if forced to repay the loans; *and* (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; *and* (3) the debtor has made good-faith efforts to repay the loans." *In re O'Hearn*, 339 F.3d at 563.

### A. Ability to Pay

ECMC argues that Durrani has failed to show that she cannot afford to repay her loans without falling below the minimum standard of living. ECMC points to expenses in Durrani's budget for credit card charges and ECMC asks the court to infer that she is spending the money on discretionary items. However, the bankruptcy court properly concluded that a more reasonable inference, considering

4

all of the facts and circumstances in Durrani's life, is that the charges were merely made to pay for unexpected monthly expenses, such as clothing, which for example, is not included anywhere in the budget provided to the court. The bankruptcy court also correctly noted that neither are other items included in her budget for necessities such as household repairs. In fact, in response to ECMC's interrogatories Durrani explained that in the past she has incurred significant household expenses such as when she had to replace her refrigerator, repair her stove, and replace a broken dresser. (R. Int. 12).

Also, the bankruptcy court properly noted that, considering Durrani's health problems, the $100 per month allocated to medical expenses is not likely to be sufficient and such expenses are likely to increase. In regards to Durrani's cell phone expenses, she explained at trial that her neighborhood is dangerous and that she needs a cell phone for safety reasons. ECMC cites to case law that indicates that expenses such as cell phones are discretionary spending. However, ECMC construes the holdings in those cases too broadly. Perhaps in other cases a cell phone would be discretionary spending. However, based upon the circumstances in the instant action, the bankruptcy court could properly conclude that it was a reasonable necessity. ECMC also complains that Durrani has not provided sufficient records to substantiate her claim that she gives $226 per month to her church. However, the bankruptcy court properly considered Durrani's statement to the court that some of her contributions were made by cash contributions in the

church basket and by other means that would not generate any type of receipt.

ECMC also complains that there is no evidence that Durrani has significant health problems that might inhibit her ability to perform her job. ECMC claims that other than the evidence regarding Durrani's handicapped parking placard, she "provided no corroborating evidence regarding any medical conditions at trial. . . ." (Applt. 4). Durrani has consistently indicated that she has significant health problems. In response to ECMC's interrogatory number 5 Durrani stated that she suffers from "diabetes, high blood pressure, high cholesterol, poor vision and osteoarthritis in [her] right knee." ( R Int. 5). She also stated that, because she works with the public she suffers "from job-related stress, anxiety, and fatigue." ( R Int. 5). Durrani also responded: "The diabetes causes me to be sick a lot and I have recurrent diabetic related infections." ( R Int. 5).

ECMC attempts to make much of the fact that Durrani has indicated that she will retire at age 55, and ECMC refers to her "voluntary choice" to retire as if Durrani had indicated that she was going to do so in order to have more leisure time. However a close look at the evidence shows that ECMC is turning a blind eye to the totality of the evidence in this case. In response to another of ECMC's interrogatories Durrani stated the following:

> In 2007, I will retire due to a combination of physical, emotional, and professional issues. My health is poor, I have a permanent disability , and I wrestle with high stress directly related to my job and finances. Every day, I push the limit trying to remain stable financially and emotionally, and I juggle everything to meet my expenses and assist my daughter with her college tuition. Because of the increased levels of

> emotional and physical stress, it is entirely possible, I may **need** to retire before I am eligible to without penalty in 2007.

( R Int. 13). The bankruptcy court heard testimony directly from Durrani about her health conditions and found her testimony to be credible. The bankruptcy court had the opportunity to determine from firsthand testimony whether Durrani's health conditions would impact her ability to pay. The bankruptcy court also made reasonable inferences from the evidence presented before it in coming to its conclusions concerning Durrani's health problems. We conclude that the bankruptcy court had sufficient evidence to support its findings. We do not find that the bankruptcy court erred in its determination regarding Durrani's ability to pay. It is clear from the record that Durrani's meager salary and her many necessary expenses would make it impossible for her to meet the $395 per month payments without falling into abject poverty.

### B. Additional Circumstances

The bankruptcy court concluded that additional circumstances showed that Durrani would be unable to meet her loan repayments. The bankruptcy court found that her age was one additional circumstance because Durrani is 51 and will retire at age 55. The bankruptcy court correctly considered Durrani's age in its determination. The bankruptcy court also considered Durrani's health to be an additional circumstance. The bankruptcy court noted that Durrani suffers from diabetes, high blood pressure, high cholesterol, poor vision, and osteoarthritis in one

7

knee. For the reasons stated above, there is evidence that shows that Durrani has significant health problems that are degenerative conditions and are likely to only get worse. Thus, the bankruptcy court properly addressed the additional circumstances in this action.

### C. Good Faith Effort to Repay

The evidence shows that Durrani made a good faith effort to repay the loan. The bankruptcy court properly noted that Durrani has made nine payments and that after she filed for bankruptcy, she actually completed her plan and received a discharge of her other debts. The bankruptcy court also noted that there was evidence that Durrani has engaged in extensive communications with ECMC and has attempted to work out her debt obligations rather than avoiding any contact with ECMC. ECMC points again to the fact that Durrani is going to retire as a basis to conclude that Durrani has not in good faith attempted to repay her loans. (Applt. 14). ECMC hints that her retirement is merely part of a scheme planned for decades to avoid her school loans. However, as explained above, this fact presented by ECMC is a red herring. Durrani has provided ample reasons for her planned retirement and has shown that her retirement will be a forced retirement due mainly to health problems.

## CONCLUSION

Based on the foregoing analysis, we affirm the ruling of the bankruptcy court.

                                            Samuel Der-Yeghiayan
                                            United States District Court Judge

Dated: February 1, 2005